OPINION
{¶ 1} Anita Samuels entered guilty pleas to a four count indictment charging her with two counts of aggravated murder, one count of aggravated robbery, and one count of tampering with evidence. After merging the two aggravated murder counts, the court imposed concurrent terms of life for aggravated murder, nine years for aggravated robbery, and four years for tampering with evidence. Samuels asserts a single assignment of error on appeal:
 {¶ 2} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ENTERING (sic) A PLEA OF GUILTY THAT WAS NOT `KNOWINGLY AND INTELLIGENTLY GIVEN' DUE TO THE TRIAL COURT'S CONFUSING AND ERRONEOUS EXPLANATION OF THE MAXIMUM PENALTY INVOLVED, AS WELL AS HER RIGHTS UNDER THE JURY SYSTEM AS MANDATED BY CRIMINAL RULE OF PROCEDURE 11."
 {¶ 3} Samuels claims that her guilty pleas were not knowingly and intelligently given, primarily because of two statements made by the trial court during its Crim.R. 11 colloquy with her.
 1. {¶ 4} The trial court stated: "Aggravated murder carries . . . a mandatory sentence of — maximum sentence of life. Do you understand that?" Samuels responded: "Yes, sir."
 {¶ 5} Samuels appears to be arguing that while she was told the maximum penalty for aggravated murder was a life sentence, she was not told that a life sentence was mandatory. Thus, she may have not have understood that a life sentence was required. Hence, the argument concludes, her plea was not knowing and intelligent.
 {¶ 6} Crim.R. 11(C)(2)(a) requires the trial court to determine that a defendant understands "the maximum penalty involved." We do not understand Samuels to argue that the trial court failed to do so. Furthermore, the above quoted statement does inform Samuels that the sentence is mandatory. Finally, when the statement is viewed in context, we conclude that there can be no doubt that Samuels understood a life sentence was mandatory:
 {¶ 7} "THE COURT: Now, going back to the charge of aggravated murder. Aggravated murder carries a potential fine of up to twenty five thousand dollars plus court costs, restitution, or other financial sanctions. And a mandatory sentence of — maximum sentence of life. Do you understand that?
 {¶ 8} "THE DEFENDANT: Yes, sir.
 {¶ 9} "THE COURT: And because it's mandatory, you cannot receive probation; you cannot receive any early release from prison. Used to be called shock probation where a court could release someone early in a sentence but because this is a mandatory sentence you cannot get any — you can't get probation and you can't get shock probation or early release from prison. Do you understand that?
 {¶ 10} "THE DEFENDANT: Yes, sir."
 {¶ 11} The trial court proceeded to discuss parole eligibility with Samuels, based on sentencing configurations that were possible, concluding as follows:
 {¶ 12} "THE COURT: But whenever you're eligible, wether (sic) it's in 28 years or 20 years or 39 and a half years, it would be the decision of the parole board to grant you parole. They may very well decide not to grant you parole and you would then serve a literally, a life term, you would serve the remainder of your life in prison. Do you understand that?
 {¶ 13} "THE DEFENDANT: Yes, sir."
 {¶ 14} Prior to entering her pleas, in discussing her insistence upon pleading guilty as charged, her counsel stated:
 {¶ 15} "I've worked very hard with her, spent a lot of time with her going through everything. I know how serious this is. She's talking about the rest of her life but she's just insistent. Also in talking to her, I am satisfied that she is competent, your Honor, that she does understand the charges and penalty. And I have no doubt in my mind, I'm satisfied she's capable of entering a plea."
 {¶ 16} In a written plea form pertaining to the aggravated murder counts, which Samuels signed, the prison term is described as "life on each count."
 2. {¶ 17} In discussing with Samuels her right to a jury trial, the trial court said in part:
 {¶ 18} ". . . if the prosecutor were unable to convince eleven of the jurors beyond a reasonable doubt that you were guilty and that twelfth juror had a reasonable doubt, then you could not be convicted."
 {¶ 19} Samuels contends, and the State agrees, that this was a misstatement. The parties disagree as to its effect. Samuels contends that it "confuse(d) her into not knowingly and intelligently waiving" her right to a jury trial. The State contends, and we agree, that when put in context, it is clear that the trial court inadvertently said "unable" rather than "able" and no confusion occurred. The trial court's complete discussion of Samuel's right to a jury trial is as follows:
 {¶ 20} "THE COURT: The next right you have is you have a right to require the prosecutor to convince all twelve members of that jury, convince all of them, convince them unanimously and convince all of them beyond a reasonable doubt that you are guilty before the jury would be able to find you guilty of any one or all four of these charges.
 {¶ 21} "In other words, if the prosecutor were unable to convince eleven of the jurors beyond a reasonable doubt that you were guilty and that twelfth juror had a reasonable doubt, then you could not be convicted. All twelve jurors would have to be convinced beyond a reasonable doubt of each and every element of each of these charges, convinced of all of the aspects of the definitions of these four charges before you could be found guilty. Do you understand that?
 {¶ 22} "THE DEFENDANT: Yes, sir."
 3. {¶ 23} Samuels also suggests that her plea was not intelligent or voluntarily made because she pleaded as charged without moving to suppress evidence or engaging in plea negotiations, and because she was emotional when she entered her pleas.
 {¶ 24} The charges arose out of Samuels and her boyfriend killing and robbing Samuels' father. She gave her trial counsel specific instructions — over counsel's protestations — not to fight the charges. The trial court took pains to assure itself that Samuels' emotional state did not interfere with her ability to understand the plea proceedings.
 {¶ 25} The record provides no support for this assignment of error, and it is overruled.
 {¶ 26} The judgment will be affirmed.
FAIN, J. and GRADY, J., concur.